It's 18-7012, United States v. Johnson. Counsel, we're ready to hear you. May it please the court, counsel, my name is Robert Williams. I'm the Assistant Federal Defender in the Eastern District of Oklahoma. I represent the appellate in this case, Michael Johnson. Mr. Johnson was indicted with a single count of felon and possessional firearm. He pled guilty to that count and was sentenced by the court under the enhanced punishment statutes under the ACCA Act and under 924E. The guideline range from the PSR was 210 to 263 months at which the court sentenced Mr. Johnson at the low end of that guideline. Prior to sentencing, Mr. Johnson filed a variance seeking relief of 180 months from the advisory guideline range and he based that variance on two separate issues. The first was the failure to receive full benefit of acceptance of responsibility as provided in 3E1.1 and the second was his age and health concerns that he suffered due to COPD, degenerative conditions and the like. At sentencing, the court committed a procedural error by refusing to fully consider the defendant's motion for variance, specifically the full acceptance of responsibility of the third point under 3E1.1. Well, I thought the court rejected consideration of that. I'm not going to, not taking that into account. Yes, Your Honor. And by saying, he said that three times. He said, it's not going to carry much weight with me. I'm not considering it. I'm not considering it. And then he said- So he considered it and then decided not to consider it. I don't believe that he considered it at all. Well, he said he wasn't going to consider it. He had to consider it in order to conclude that he's not going to consider it. Under that, under that, yes, he had. But he also stated that- Under the, we don't know what we don't know doctrine. We don't know what we don't know. Were you counseled? The court specifically said that he felt that it was totally within the discretion of the government and he was not going to disturb that. Were you counseled below? I was, Your Honor. You were? Yes, Your Honor. Well, he also said he recognized his authority to vary from that. Yes, he did. And Judge White says that at every sentencing. And he does have the discretion to vary. But as part of that discretion, he has to fully consider all of the 3553A factors. And in this case, he just didn't do it. He, he thought that it was totally within the discretion of the government. He was not going to disturb that discretion. And he stated at least three times that he wasn't considering it. I'm saying he has authority to, to vary from that termination of discretion. Doesn't that mean I recognize I could, but I'm not going to for policy reasons like government reasons? I don't agree that it was a policy reason. I just, I believe that the court, when it said he has the fullest possible discretion, contradicted itself earlier when he says, I'm not considering that because it's, it's within the government's discretion. I'm not going to disturb that. As, because that's the way I usually, what I usually do in these cases as a matter of policy. I'm sorry, Your Honor. Because that's what I usually do in these cases as a matter of policy. And, and that's what, and that's maybe what the court determines that it's just his, that court specific policy that it's not going to even consider those things. But I, under the 3553A factors under U.S. v. Gaul, the court is obligated to consider anything that could have an impact on whether or not the government doesn't file their third point. And this case is highly contextual because it's the procedural history leading up to the sentencing that creates the problem. And that's what, that's where the error is created. Well, we're here on plain error review, aren't we? I, I believe we're under a de novo review, Your Honor. Failure to consider, fully consider the. Did you object to what the court was doing? I'm sorry, Your Honor. Did you object to the sentencing factors that the court employed? I, I, I drafted the motion that the court heard the court. For a variance. For a variance. That's correct. All right. And I thought you would agreed that the court had no authority for the third, to, to make the government file the third point. Under the guidelines, that's correct. All right. However, I did not move for relief under the guidelines. I moved for relief under the 3553A factors. Right. And, and those are separate and apart from the guidelines. The court has to consider the guidelines and it did. The guidelines were calculated correctly. I did not lodge an objection to them in the PSR because there was no motion for the court to consider, had the, had it been included in the PSR, it would have been erroneous. So as it stands, the, the guidelines were calculated correctly, but the guidelines are only one aspect that the court must consider. The court is obligated to consider any legitimate 3553A factors that are written, that are presented to it. And in this case, Mr. Johnson presented two, one of which the court wholly stated at least three times, it was not considering, period. And, and that failure to, to. But didn't he also recognize the chilling effect of that? He did. I mean, he was thinking about this. It's not like it wasn't in his mind, as Judge Cicero pointed out. I believe that the, the court did in fact state that, you know, failure to file the third point for, for litigating motions would have a chilling effect. It, it didn't lack a persuasive influence on the court. And he also commented the government usually does, ignores that and gives you the third point. And then he, then he said, again, I'm not considering that. He goes back to that. He, he started it at the beginning of my argument, whenever I got up to present my basis for the variance. After I was complete and the government got up to present its argument, he said, again, I'm not considering that. In its ruling, the court says, I've considered the 3553A factors and other things, and I, but I'm not considering the third point. So I'm not giving any credit for that. I'm sorry. He considered the 3553A factors, but he wasn't going to give any particular credit to the fact that the late guilty plea was due to the fact of the delay in the, in the, in the deciding of the case. If I remember the record correctly, the court said that it's not considering that and it's, and it's ruling on the motion. Okay. And by not considering a 3553A factor, that's legal error and that's reviewed de novo. And so, and, and you said, I concede that it is totally within the government's file for a third point. And as I say, it is not appropriate for me to come to this court and ask that you order them to do that or to grant a variance based solely on that basis. That's not what's going on here. That's correct. I did. I did say that, Your Honor. Under, so, so long as the government is not motivated by an unconstitutional ground and there's a legitimate government interest, and it's done. Did you argue that? Because it seems to me you have to throw yourself on the mercy of the court on that point. I was not moving under the guidelines. The guy, I believe that the government acted appropriately in relation to the guidelines. Well, it was the 3553A. Let me say this. I mean, from my perspective, from where I sit, I think this case has a lot of sympathy. Yes. Because it raises a question in my mind. Does the acceptance of responsibility guideline require a defendant to waive constitutional rights in order to waive, not just constitutional rights, but motions of any type in order to obtain the, in order to comply with the guideline? And, but the problem in my mind is this, that let's say you have a defendant who seeks to avail herself of the guideline, but wishes to test a constitutional issue first. And so what the government is saying, well, because we had to prepare the, you're not entitled to the, to the use of the, of the third point. But the only way that the defendant could avoid that is by pleading guilty immediately, because otherwise you don't know when the court is going to rule on a motion to suppress, for instance. I agree with you, Your Honor. I believe, I don't, I do not believe that the language and intent of the guideline was that, but that it, but it has that effect. If that's the effect, even though it may not be the precise language. Correct. In this case, we really have, what happened in this case is we had a collision of three compelling legitimate forces. We had the court schedule, which has to be considered. We had the government's need to prepare for trial. And we had Mr. Johnson's desire to protect his constitutional interests. And, and those three things came to a head. This is a case where everybody did it right. And this situation falls outside of the heartland of that guideline, because in a case where the government is preparing for trial, the court is adhering to its schedule and Mr. Johnson is trying to fully litigate his constitutional protections. Everybody does it right, but Mr. Johnson ends up getting the short end of the stick in the long run, because he gets a sentence that's 22 months longer. That's why we moved under 3553E, because the procedural history in this case moved very, very rapidly. We filed a motion to suppress nine days after the indictment came down. Once the R&R was issued, we filed an objection immediately. Mr. Burris and I had several conversations about what are we going to do? And I said, well, I don't know, from the looks of it, we, we met, we're going to trial or something to that effect. So what is he going to do? I don't blame the government for what they did. No more than I can blame Mr. Johnson for wanting to exercise his Fourth Amendment rights. No more than I can blame the court for wanting to keep a, a tight schedule because Judge White is the only judge there and he's got to keep things going. And all of those things have to be protected and preserved. And that's what happened here. But at the end, Mr. Johnson doesn't get the benefit. From my perspective, that overcomplicates the matter. It seems to me the question under the guideline is, is the, is, does the guideline require a plea of guilty to the waiver of all constitutional rights, the constitutional right to a trial, as well as the constitutional right to seek, to suppress evidence on a constitutional basis before you can get the benefit, because I doubt that there would be any argument on the part of the government. We'll ask the government when, when counsel gets here, but, stands, stands before us. But it seems to me that if your client had pled guilty immediately and waived the, the right to file suppression motions, the counsel would readily concede that the third point under the guideline would be applicable. That's correct, Your Honor. Had Mr. Johnson, after reviewing the discovery, decided, you know what, I want to plead guilty. I don't want to go with the motions. Yes, that would have been the effect. But on the flip side of that coin, as we pointed out earlier, filing motions and fully litigating his constitutional protections sometimes may have the effect of not getting full credit for acceptance of responsibility. Even though he did it. And that is, is that a case of first impression for us too? I think it is, Your Honor. After, are there any cases that instruct us? I have not been able to find any. And, and we looked. As I said, this, this case kind of falls outside of the heartland of, of the guideline and it's, the, the effect is just as, as Your Honor pointed out. The trial court here said the, the, the, when the government said the basis why we're not asking for the third point is because we had had to prepare for trial. And the trial, is that the basis that the trial court agreed with the government and did not grant the third point? I don't know, Your Honor. I thought, I thought the answer to that question was yes, because if the answer is you don't know, then what are we doing here? Well, the, the explanation is that the court gave was he felt it was within discretion of the government, Mr. Burris. Based upon the fact that they had done pre-trial preparation. That, that's correct, Your Honor. And, and Judge White seemed reluctant to even consider the context of why the third point wasn't filed. He, in that respect, he was acting more as a rubber stamp for the government in his discretion and not as a, a reviewer of all the facts. I have a question about why couldn't you have informed the government that your client was going to plead guilty if he lost his motion to suppress? Which would have, given Judge White always sets rapid schedules, which makes it very difficult for both sides. That, that's correct. And given that fact, you know what's going to happen if you delay. The government's going to spend a lot of time preparing for trial. When we, when we submitted the, when we finished the report, I'm sorry. When we finished the motion to suppress hearing, Mr. Johnson was transported back to Okmulgee. We had had conversations which were subject to privilege, but Mr. Johnson had indicated to me that he had no interest in pursuing a plea until after he knew the outcome of the motion to suppress. At, you know, I am, I am out of time. We'll grant you a minute for rebuttal and we'll see if you need any more at that point. Thank you. Good morning. May it please the court counsel. My name is Dean Burris and I represent the appellee in this case. Thank you, Mr. Burris. Mr. Burris, is there any question on the point that I asked about during the, your, your colleague's argument that had the defendant pled guilty immediately on, at the point of indictment, that you would have agreed to grant that third point? Absolutely. We would have agreed to that. And I, and I think that the whole question here, it seems to me is that should the guideline be interpreted to pre, to basically preclude the filing of, of suppression motions in order to benefit from that guideline reduction? Absolutely not. And I think that the attempt. How do we get around the dilemma? Well, I think that the, the circuit cases that have addressed this issue and that we've cited in our brief, for example, Moreno, Trevino and Marquez and other cases have looked at the timeliness and, and acceptance of responsibility, but how we get around it in the, in the way that there is a way out to your concern in terms of the sympathy. Is that Seymour's point that the defendant goes to you and says, if I lose the motion, I'm going to plead guilty. So don't bother to prepare. Not necessarily because unfortunately we've had defendants change their minds after the fact. And so I don't think that's the way out. The way out is the way out that the appellant actually put in his briefs that the government could have sought a continuance. And I don't think that's the proper way out either. I think the defendant or the appellant could have sought the court a motion to continue the trial date to allow for those proceedings to have been completed. Is that normally done? Have you ever heard of that being in practice being done? If the timeframe is going to affect a defendant's rights, I certainly think that that would not be a nice way to do it. Well, I agree with you that it probably sounds to me pretty rational, but I mean, is that in fact practice? Should we, in our opinion, no matter whether we affirm or reverse, kind of put in some cautionary words for counsel in our opinion saying, if you're going to try to avail yourself of the third point, A, you've got to plead guilty right away, or B, if you've got to do something like what Judge Seymour says or like what you say. Well, I think that you have to look at the individual. How's counsel going to know? You have to look at the individual case. And if that trial deadline is coming up as it was in this case, by the time the defendant pled guilty, we were within a week of trial, just days. I know, but he pled guilty, he says, within a day of the time that the court's decision came down. And so what keeps this older gentleman from spending the rest of his life in jail, unless he lives a very long life, is that very, just, it's this very point. I don't think it's this very point because, and not to be rude or blunt about his age and his health condition, but I think either sentence probably results in him serving a life sentence. Well, remind us of that, please. He has COPD in a- He's how old now? I'm reminded by counsel, 65, but he has serious health issues that have- The sentence that he did get is what? How many years? 210 months. How many years? Make it easy, make it easy. I went to law school, so I wouldn't have to do math, Judge. I'm sorry. So it's close to- It's around, I'm going to say around 18 years. All right. So 65, 75, 83, but- With COPD and he's on oxygen. Yes. On COPD, yeah. So worst case, best case scenario, and if you had given him the third point is- Is 15 years and eight months. Okay. So not a lot, but a little hope for him. Yes. I think that the, going back to my point is, is if the defense counsel sees that there is going to be this timeliness issue, and he's filed a motion to suppress, and that's within the short calendar that we have, going to the judge and asking for continuance is not unreasonable, and I suspect the court would have granted that continuance. The court grants continuances on other basis, particularly when brought by the defense, not so much by the government, for obvious and proper reasons. The defendant is in a better position to ask for those continuances than the government, and holds the key to the speedy trial waiver. Given that you stand to hold the key to whether you do or don't grant the third point, yes and no. I don't hold the key. I hold the key as to whether I end up doing trial preparation and the things that are required to prepare for trial. And if I've done those things, the implication is, is that the government's going to run out and prepare for trial really early just to deny the third point, and I don't think that's ever going to happen. And, you know, the question is, is whether it was animated by an unconstitutional motive or if it was rationally related to a legitimate government interest. Well, you could argue that depriving somebody of the right to file a motion to suppress, whether it's intended to do so or not, does have the effect of denying a constitutional right. Moreover, I suppose the very denial of the trial itself, the guideline kind of induces people to, if you want to reserve your rights, you'd better plead guilty. I never liked that guideline very much for that reason. When should he have filed a motion for continuance? At the time of which we began the suppression hearing, if he recognized that that was going to delay the trial or when we started talking about trial preparation, there were actually discussions between counsel and I about trial preparation and particularly one witness that they had sent their witness to locate, nor could we for a period of time. And we found him and we actually exchanged information on locating that witness. They saw that we were issuing subpoenas for trial, which happened towards the end or beginning of this process. And when those blank subpoenas were requested, they knew we were gearing up for trial. We'd had conversations on the fact that we were preparing for trial and needed to prepare for trial in order to be prepared. Couldn't you both ask for a motion for continuance? I would have. That would have been fine. I think that that could have worked. And that's the reason that I think Judge Lacerra, when you're talking about this being the thing that constrains their constitutional rights, it doesn't because there is an out. It just wasn't exercised. And until it was exercised... It's pretty difficult for lawyers to go to... Lawyers always hesitate to go to a judge and say, judge, please rule. I mean, it's not an easy position. You point out the difficulty though, if the motions to suppress isn't decided until given Judge White's short schedule. I would be foolish not to prepare for trial. And the third point is about expending resources of the government, the court and others in terms of the timeliness of his plea. And this is a case in which there was an out that could have been exercised. You have the discretion, don't you? No. We do. Whether you ask for the third point or not. We do. So you can say, well, I understand the circumstances here and it isn't really defense counsel's fault. It's nobody's fault that the judge hasn't ruled. The judge may just be busy and doesn't have time to rule. I mean, who are we to criticize anybody for delay in getting an opinion out? I mean, sometimes there's 2,700 factors influencing when it comes out. So you could say, well, I understand. And so I'm going to ask for the third point. We have no criticism of the judge, but the reason we didn't file the third point is because of the significant resources we spent in preparation for trial. And that's a legitimate purpose. But that wasn't defendant's fault, unless you want to chill his filing of a motion to suppress, was it? It actually was. The judge's short time frame that causes this problem. But that short time frame could have been altered with a motion to continue that trial date. And that does happen. It didn't in this case. Or the trial court could say, hey, I recognize that it was my delay in getting the opinion out that does it. So I will give the benefit of the third. He could have. But the court here said, no, I'm not going to consider that because I believe that counsel for the government's in good faith. And they tell us that the reason they're not asking for it is because they had already started preparation. Yes. And I think that as Judge Kelly pointed out, Judge White did consider these things and in fact, had already looked at the law in terms of whether or not it was animated by an unconstitutional motive or not rationally related to a legitimate government end. And he actually had thought of those things coming into this. He had thought of those things. I think it wasn't animated by an unconstitutional motive. It was animated by the judge's delay. And we're not faulting the judge's delay. It's just it's a matter of the calendar. So I think the magistrates took the time to properly decide the matter. And I can't criticize them for that. And I think that Mr. Williams is right. There are three. I bet the judges love you. The magistrates love you because you never criticize them for anything. I try not to. I find that unhealthy. It doesn't get you anywhere. It's generally unhealthy. So I try to avoid that. I think that, you know, I think Mr. Williams is right. There's three angles here. The trial court's calendar of the government's position and the defendant's position all coming together. But there was an out. And that was the out of asking for a continuance and opening up that back end and relieving that pressure. And I repeat my question. Is that a common practice for people that the lawyers do that? I'm personally very opposed to continuances generally. But if a defendant asks, I rarely object. Even though you're going to have to do all this trial preparation that you might not need to do? I rarely have a situation where the suppression hearing ends up coming to this point. It just did in this case. Well, let's not particularize this to you. I'm just that's why I ask. This is a general practice, because my impression from reading records is that it's not a normal practice. It's not unusual for people to ask for continuances and have them granted. For that reason? Not necessarily for that reason. It's not unusual for people to ask for continuances, but that's not what we're talking about. What we're asking about is whether it's unusual to ask for a continuance under this circumstance, under these types of circumstances. These circumstances don't come up that often. So it's unusual in that sense. Thank you. But we believe that a plain error standard applies because there was a lack of objection at the trial court as to his methodology. And we believe that there is no plain error in this case. And in fact, Judge White points out in his decision that he recognizes his right to vary. He recognizes that this would be the same sentence he would impose regardless of any of the factors out there. And I believe that to be the case. And as a result, we believe that this case should be affirmed. And he was sentenced to within the guideline range. Of either guideline range, even if the third point were granted, it was still within that range. Thank you, counsel. Thank you. Thank you for yielding the rest of your time. Counsel, I think you have. We'll grant you a minute. Can I ask a question? Couldn't you have filed when you saw how much time the magistrate was taking? Couldn't you have filed for a motion for continuance? Your Honor, the third point was foreclosed prior to the filing of the final order by the district court. I could have, I suppose I could have filed a motion to continue, but I didn't, as I say in the record, I didn't feel the need to do so. I didn't know how long the court was going to be taking. And for me to stand here and say, I could have done that is just rampant speculation. I don't know how Judge White would have... Hindsight is wonderful. I'm sorry? Hindsight is wonderful. Yes, yes, Your Honor, it is. I don't know if Judge White would have granted that. I didn't know when... Well, but that's not the, in fairness, Judge Seymour's question was, when you saw how late it was, and you'd had conversations with counsel, he says, the two of you had trial preparation timelines. Couldn't you have alerted the trial judge of that? Your Honor, I don't know how long or when the government starts to prepare for trial. I'm not, they don't inform me of those things. Mr. Burris and I did have conversations about the locations of certain witnesses. That is true. But the reality is I filed my notice of intent to appeal as soon as practical under the context of the case. And for that reason, we would ask the court to remain with instruction. Thank you very much. The case has been submitted. Counselor.